UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>RICHARD DESCISCIO,<br><br>*Defendant*. | Crim. Action No.: 88-cr-00239<br><br>**MEMORANDUM AND ORDER** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Defendant Richard DeSciscio's ("Defendant" or "DeSciscio") motion for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (ECF No. 5). Defendant, a prisoner serving a term of 75 years' imprisonment at an FCI Allenwood facility in White Deer, Pennsylvania, argues that a series of medical issues from which he suffers, his susceptibility to contracting COVID-19, and his old age, justify his immediate release from prison. The Court heard oral argument on June 18, 2020. For the reasons stated below, Defendant's motion is denied.

**I.**

On or about June 26, 1989, Defendant was convicted by jury on all 26 counts of the Indictment, including for violations of 18 U.S.C. § 1952 (Racketeer Influenced and Corrupt Organizations Act ("RICO") conspiracy to murder John Gotti, Gene Gotti, and Irwin Schiff and participation in the murder of Irwin Schiff); 18 U.S.C. § 1955 (conducting an illegal gambling business); 18 U.S.C. § 1962 (racketeering); and 18 U.S.C. §§ 891 and 892 (loansharking). (Moving Br. at 3, ECF No. 5-1, Opp. Br. at 2, ECF No. 9). On September 26, 1989, the Hon. Marianne Trump Barry, sentenced Defendant to a term of 75 year's imprisonment for his crimes.

(*Id*.). On November 21, 1990 the Court of Appeals for the Third Circuit affirmed his conviction. (*Id*.). Subsequent motions under 28 U.S.C. § 2244 for leave to file a second or successive § 2255 petition to vacate his sentence were denied. (*Id*.).

According to the Presentence Report, Defendant was a member of the Genovese Crime Family of La Cosa Nostra, who operated in a faction of that criminal organization controlled by co-defendant Louis Anthony Manna. (Opp. Br. at 2 (citing Presentence Report ("PSR") ¶¶ 1 26)). In late 1987, Defendant, Manna, and others engaged in a conspiracy to murder John Gotti, an infamous underworld figure alleged to have controlled the Gambino Family of La Costra Nostra, and John's brother Gene Gotti. (*Id*. at 2-3 (citing PSR ¶ 30)). Recorded communications between the conspirators confirmed the plan to murder the Gottis. (*Id*. (citing PSR ¶ 31)). In addition, Defendant assisted in Manna's plan to murder Irwin Schiff; Schiff was a "hidden principal in a network of companies and corporate shells that were engaged in a multi-million-dollar fraud and money laundering scheme operated for the benefit of the Genovese Family." (*Id*. (citing PSR ¶¶ 32-34)). Schiff was shot twice in the head in the restroom area of an Upper East Side restaurant. (*Id*. (citing ¶¶ 32-33)). Defendant was present for the shooting. (*Id*.).

Defendant also assisted in the operation of a wide-spread gambling network in Hudson County, in which Defendant carried out threats of force and committed acts of violence. (*Id*. (citing PSR ¶ 55)). In preparing the PSR, the United States Probation office described Defendant's role in the gambling conspiracy as follows: "DeSciscio was an enforcer for the group. He served as an intermediate level supervisor for the gambling operation, resolving problems for Casella [a higher ranked member of the Genovese Family]. Consequently, DeSciscio was a supervisor of extensive racketeering activity involving five or more persons." (*Id*. (citing PSR ¶ 61)).

Defendant has served approximately 31 years and 9 months of his sentence and is currently housed at a medium security facility that is part of FCI Allenwood. (*Id*. at 4). Defendant's projected release date is July 5, 2052. (*Id*).

On April 10, 2020, Defendant's daughter submitted a request to the Warden of FCI Allenwood for her father's compassionate release based on his age and serious medical conditions, including a heart condition and cancer. (ECF No. 5-3). In that letter, Defendant's daughter also wrote:

> My father is no threat to society. He has been a model inmate. He has a loving family who misses, loves and worries sick about him everyday. I am terrified for my dads health and well being. I dont feel he could survive Covid 19 virus. Please consider releasing my dad based on his age, health, and 30+ years time served so he does not die. My dad is my world.

(*Id*.). In a letter dated April 28, 2020, FCI Allenwood Warden Catricia L. Howard denied the request for compassionate release, stating, in part:

> The health and safety of both staff and inmates are our top priority and the Bureau of Prisons (BOP) is taking extraordinary measures to minimize COVID-19 exposure. The request for Compassionate Release/Reduction in Sentence (RIS) has been reviewed in accordance with Program Statement, 5050.50. His medical condition does not limit his ability to perform activities of daily living or has imposed serious cognitive defects.
> \* \* \*
> After a comprehensive review of [Defendant's] circumstances, he is not eligible for Compassionate Release/RIS placement.

(ECF No. 5-4). Subsequently, on April 26, 2020, Defendant himself submitted a request for compassionate release based on BOP Program Statement 5050.49, (ECF No. 5-5), but same was denied for failure to properly request the reduction under the current BOP Program Statement 5050.50, (ECF No. 5-6). In the instant motion, Defendant moves this Court under U.S.C. §

3

3582(c)(1)(A) for a reduction in sentence, which would result in his immediate release from custody, due to, *inter alia*, the threat posed to him by the COVID-19 pandemic.

In opposition to Defendant's motion, the Government submitted the Affidavit of Suzanne Brown, an Executive Assistant at FCI Allenwood.  (Affidavit of Suzanne Brown Executive Assistant FCI Allenwood ("Brown Aff."), ECF No. 9-1).  In her affidavit, Ms. Brown attests to various actions undertaken by the BOP's to combat the spread of COVID-19 in its facilities. (*See id*. ¶¶ 2-15).  These actions include, *inter alia*: (1) social distancing measures, where possible, (*id*. ¶ 7); (2) the issuance of cloth face masks to all staff and inmates, (*id*. ¶ 8); (3) body temperature screenings, (*id*. ¶ 9); the quarantining of infected inmates, (*id*. ¶ 9); and (4) restricted access to BOP facilities, (*id*. ¶¶ 10, 11).  Pertinently, Ms. Brown's affidavit also describes the safety measures implemented at the FCI Allenwood facility where Defendant resides.  (*Id*. ¶ 18). In particular, all staff and inmates at Defendant's facility have been issued personal protective equipment ("PPE"), including face coverings, which are required to be worn when in public areas.  (*Id*.).  In addition, public areas within the facility are "regularly" disinfected, and there are adequate supplies of masks, gloves, soap, and hand sanitizer to meet the needs of inmates and staff.  (*Id*).

According to the BOP, as of June 1, 2020, there were no confirmed or suspected COVID-19 cases at Defendant's facility.  (*Id*. ¶ 19).  Historically, in total, there have been two positive tests for COVID-19 staff at FCI Allenwood.  (*Id*.).  Both cases occurred in March 2020, and both affected staff members have since fully recovered.  (*Id*.).  No inmates have ever tested positive for COVID-19.  (*Id*.).

## II.

Once a federally imposed sentence commences, a district court has limited authority to modify that sentence. *Dillon v. United States*, 560 U.S. 817, 825 (2010).

The First Step Act amended 18 U.S.C. § 3582(c)(1)(A) and allows a criminal defendant to request a reduction in sentence, also known as "compassionate release," for "extraordinary and compelling reasons" after exhausting administrative remedies. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Alexander*, No. CV 19-32 (FLW), 2020 WL 2507778, at *5 (D.N.J. May 15, 2020). Before a defendant can bring a motion for reduced sentence on their own behalf directly with the district court, a defendant "must ask the Bureau of Prisons ("BOP") to do so on their behalf, give BOP thirty days to respond, and exhaust any available administrative appeals." *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020) (citing § 3582(c)(1)(A)).

If a motion is timely filed by the defendant, then a court may reduce an inmate's sentence if (1) it finds that there are "extraordinary and compelling reasons" that warrant a reduction; (2) the reduction would be "consistent with applicable policy statements issued by the Sentencing Commission" as well as the Court's independent assessment; and (3) it considers the sentencing factors set forth in § 3553(a), as applicable. *United States v. Brown*, No. CR 07-19 (RBK), 2020 WL 2466081, at *2 (D.N.J. May 13, 2020) (citation omitted).

Therefore, a defendant seeking a reduction in his sentence under the First Step Act "bears the burden" of proving that he has (1) exhausted administrative remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release. *United States v. Sellers*, No. CR 10-434 (RMB), 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). Here, Defendant and the Government agree that Defendant had exhausted administrative remedies before filing this motion, (*see* Opp. Br. at 9, 10-11); and

the Court adopts the parties' agreement. Accordingly, Defendant has the burden of demonstrating that compelling and extraordinary reasons warrant his release.

## III.

In his motion, Defendant raises two distinct sets of arguments. *First*, Defendant argues that he is eligible for compassionate release under the BOP Program Statement 5050.50 as a matter of law. *Second*, Defendant contends that he has satisfied the criteria for compassionate release under 18 U.S.C. § 3852(c)(1)(A)(i) and the Sentencing Commission's Policy Statement. The Court will address these arguments *seriatim*.

### A. CONSIDERATION OF THE BOP PROGRAM STATEMENT 5050.50

In Defendant's moving papers, he seems to contend that the Court may grant him compassionate release under the BOP Program Statement 5050.50, §§ 4(a)[1] and (b)[2]. To the extent that Defendant is asserting same, he is incorrect. The BOP Program Statement is not a statutory vehicle for seeking compassionate release in federal court, but rather "internal agency guidelines [that] may be altered by the [BOP] at will." *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011) (citation omitted). In this case, Defendant must properly show that compassionate release is warranted under the appropriate statute, 18 U.S.C. § 3852(c)(1)(A), by demonstrating extraordinary and compelling reasons under § 3852(c)(1)(A)(i).

---

[1] Section 4(a) provides: **"'New Law' Elderly Inmates.** Inmates sentenced for an offense that occurred on or after November 1, 1987 (*e.g*., "new law"), who are age 70 years or older and have served 30 years or more of their term of imprisonment." *See* BOP Program Statement 5050.50, *Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)*, § 4(a), *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

[2] Section 4(b) provides, in pertinent part: "**Elderly Inmates with Medical Conditions.** Inmates who fit the following criteria: Age 65 and older; Suffer from chronic or serious medical conditions related to the aging process; Experiencing deteriorating mental or physical health that substantially diminishes their ability to function in a correctional facility; Conventional treatment promises no substantial improvement to their mental or physical condition; and Have served at least 50% of their sentence." *Id*. § 4(b).

6

In any event, below, the Court will consider much of the relevant factors set forth in BOP Program Statement §§ 4(a) and (b), such as Defendant's age, medical conditions, etc., in determining whether extraordinary and compelling reasons warrant Defendant's compassionate release under the appropriate statutory vehicle, 18 U.S.C. § 3852(c)(1)(A)(i).

### B.  COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3852(C)(1)(A)(I) AND THE POLICY STATEMENT

In the present motion, Defendant argues that there are compelling and extraordinary reasons that warrant his immediate release from prison; namely, his age, medical conditions, and vulnerability to contracting the COVID-19 virus.

Congress did not define the term "compelling and extraordinary reasons," but instead directed the U.S. Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Although the Sentencing Commission has not updated its Policy Statement since the passage of the First Step Act in 2018, the Commission's Policy Statement still provides useful guidance for district courts in identifying extraordinary and compelling reasons for a defendant's eligibility for compassionate release. *See Alexander*, 2020 WL 2507778, at *3; *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020); *see also* U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G."), § 1B1.3, Application Note 1 (U.S. Sentencing Comm'n 2018).

The Sentencing Commission's Policy Statement provides that a defendant may demonstrate extraordinary and compelling reasons for compassionate release based on: (1) the medical condition of the defendant; (2) the age of the defendant; (3) the defendant's family circumstances; or (4) for "other reasons." U.S.S.G. § 1B1.13, Application Note 1. Here,

7

Defendant raises three of these potential bases, including: (1) his medical conditions; (2) his age; and (3) "other reasons" pertaining to the COVID-19 pandemic.

A defendant may show extraordinary and compelling reasons for release based on his medical conditions where:

>   (i)   The defendant is suffering from a terminal illness (*i.e*., a serious and advanced illness with an end of life trajectory) . . ; [or]
>
>   (ii)  The defendant is: (I) suffering from a serious physical or medical condition; (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1(A). In addition, a defendant may show extraordinary and compelling reasons for release based on Defendant's age, where he "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id*., Application Note 1(B).

Here, Defendant is 78 years old and has served approximately 32 years of his 75-year sentence. Moreover, Defendant allegedly suffers from several health ailments, including: (1) prostate cancer, (2) a heart condition for which he received a pacemaker, (3) chronic sinusitis, (4) kidney stones, (5) vertigo, and (6) hearing loss. (*See* Declaration of Renee DeSciscio ("DeSciscio Decl.") ¶¶ 4-8, ECF No. 5-7). It is undisputed that Defendant's medical records confirm that he currently suffers from:

>   (1) Prostate Cancer, diagnosed in October 2014;

8

  (2) Atrial Fibrillation (a heart condition), most recently diagnosed in October 2018, with the presence of a cardiac pacemaker as part of his treatment since October 2017;

  (3) Chronic Rhinitis[3], diagnosed in March 2017;

  (4) Uric Acid Nephrolithiasis (bladder/kidney stones), diagnosed in March 2014, and resolved by May 2015;

  (5) Benign Paroxysmal Positional Vertigo, first diagnosed in September 2010, resolving shortly thereafter, returning in February 2012, resolving again in May 2016, returning again in March 2020; and

  (6) Unspecified Hearing Loss, diagnosed in May 2016.

(*See* Opp. Br at 22-23). According to Defendant, his health conditions continue to worsen over time; and being incarcerated only exacerbates his conditions because "he is unable to manage his health in the appropriate matter because he lacks on-demand access." (Moving Br. at 8).

 In this case, Defendant's age and medical conditions do not warrant compassionate release. Focusing on the latter, Plaintiff has failed to adequately demonstrate that his medical conditions culminate to an extraordinary and compelling reason for his release. In particular, Defendant does not assert that he is suffering from a terminal illness or that his medical conditions "substantially diminish[ ] [his] ability . . . to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13, Application Note 1(A). Accordingly, Defendant "fails to carry his burden for proving he merits compassionate release" due to his medical conditions. *See United States v. Rodriguez-Orejuela*, No. 03-CR-20774, 2020 WL 2050434, at *7 (S.D. Fla. Apr. 28, 2020) (collecting cases).

---

[3] "Rhinitis" is a condition affecting the nasal passageways, part of the upper respiratory system, the symptoms for which can include a runny nose, sneezing, and nasal stuffiness. It is frequently caused by seasonal allergies or the common cold. (*See* Opp. Br. at 24).

9

Moreover, during oral argument, Mr. Laracca, Defendant's counsel, called to my attention a medical issue that Defendant experienced on March 23, 2020. On that day, Defendant suffered an episode of dizziness which prompted him to lay on the floor of the prison shower. Defendant's medical records submitted by the Government indicate that the episode was attributable to a diagnosis of "benign paroxysmal positional vertigo." (June 18, 2020 Medical Records, Undocketed). However, at a June 18, 2020 medical check-up, Defendant denied any mobility problems and reported no falls over the prior three months. (*Id*.). Moreover, a June 18th medical report indicated that there was no "diagnosis to suggest a fall risk," Defendant had a "normal gait," and he was oriented. (*Id*.). As such, Defendant's episode of vertigo which caused him to lay down in the shower does not alone rise to an extraordinary and compelling reason for Defendant's immediate release.

Relatedly, Defendant argues that his vulnerability to contracting COVID-19 due to his age and medical conditions also constitutes an extraordinary and compelling reason that warrants compassionate release. According to the Third Circuit, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597. Rather, "the Court must conduct a highly individualized inquiry of this Defendant to determine whether COVID-19 in conjunction with his alleged underlying medical conditions constitutes an extraordinary and compelling reason for release." *United States v. Catanzarite*, No. CR 18-0362 (ES), 2020 WL 2786927, at *3 (D.N.J. May 29, 2020).

Here, Defendant's most serious medical conditions are prostate cancer and atrial fibrillation. Neither medical condition constitute an extraordinary and compelling reason for

10

release, in light of the COVID-19 pandemic.  The CDC has compiled a list of underlying medical conditions that may place individuals at a higher risk for severe illness from COVID-19.  These include:

- Chronic lung disease or moderate to severe asthma;
- Serious heart conditions;
- People who are immunocompromised (including from cancer treatment);
- Severe obesity;
- Diabetes;
- Chronic kidney disease; and
- Liver disease.[4]

Here, Defendant does not argue, or put forth any evidence, that he is immunocompromised as a result of any cancer treatment that he received.  (*See* Moving Br. at 13-16; Opp. Br. at 23).  Moreover, his cancer is currently being treated with Tamsulosin, and there is no indication in the record that Defendant has recently complained of any serious symptoms associated with his cancer diagnosis or treatment.  (*See id*.).  In fact, at oral argument, Mr. Laracca indicated that Defendant was "doing better."  Regarding Defendant's atrial fibrillation ("AFib") diagnosis, the CDC has not categorized AFib as a "serious heart condition" that exposes patients to heightened risk from COVID-19.[5]  (*See* Opp. Br. at 23-24).  And, like his cancer, Defendant is receiving treatment for his AFib and has not recently complained of any complications from the condition, including chest pain or shortness of breath.[6]  (*See* Moving Br.

---

[4] *See* Centers for Disease Control and Prevention, *People Who are at Higher Risk for Severe Illness*, CDC.gov, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited June 5, 2020).

[5] The CDC considers "heart conditions" to include "heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension."  Centers for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness*, CDC.gov, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditions (last visited June 5, 2020).

[6] After this motion was fully briefed, on June 11, 2020, the Court received a supplemental letter from defense counsel indicating that "doctors at FCI Allenwood found [Defendant's] heart beat to be irregular

at 13-16; Opp. Br. at 24). Accordingly, Defendant has failed to carry his burden of demonstrating that his medical conditions, in conjunction with a risk of contracting COVID-19, constitute an extraordinary and compelling reason for his release.

In addition, a court may also look "beyond the medical conditions" of the defendant to determine whether compassionate release is appropriate amid the COVID-19 crisis. *Catanzarite*, 2020 WL 2786927, at *5. Namely, a court may consider the conditions at the defendant's facility. *Id*. Here, the Government has submitted an affidavit from a representative of the BOP describing the various safety measures implemented at the FCI Allenwood facility where Defendant resides. (Brown Aff. ¶ 18). Among other measures, all staff and inmates at Defendant's facility have been issued PPE, including face coverings, which are required to be worn when in public areas. (*Id*.). In addition, public areas within the facility are "regularly" disinfected; and there are adequate supplies of masks, gloves, soap, and hand sanitizer to meet the needs of inmates and staff. (*Id*). Further, according to the BOP, as of June 1, 2020, there were no confirmed or suspected COVID-19 cases at Defendant's facility. (*Id*. ¶ 19). In all, there have been only two positive tests for COVID-19 staff at FCI Allenwood. (*Id*.). Both cases occurred in March 2020, both affected staff members have since fully recovered, and no inmates have ever tested positive. (*Id*.). The mere presence of COVID-19 in our society does not constitute an extraordinary and compelling reason warranting Defendant's release. Thus, absent more compelling facts demonstrating an actual threat of contracting the virus at his facility, Defendant has failed to carry his burden. *See Catanzarite*, 2020 WL 2786927, at *5.

---

to the point that [Defendant] is at a high risk for a stroke and started him on a blood thinner . . . to reduce the risk." (ECF No. 12). In that letter, Defendant does not argue that Defendant's recently discovered irregular heartbeat constitutes a serious heart condition that heightens his risk of contracting COVID-19. (*Id*.; *see also* supra n. 3). Moreover, the letter indicates that Defendant is receiving treatment for the condition. (*Id*.).

12

Even if Defendant was able show that his age, medical conditions, and vulnerability to COVID-19 constitute extraordinary and compelling reasons for his release, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a).  In particular, "[c]ourts have found during the coronavirus pandemic that, even where an individual has medical conditions which make him vulnerable to COVID-19, his danger to the community may ultimately outweigh his health concerns and the balance of factors weighs against release." *United States v. Miranda*, No. 3:16-CR-128-(VAB)-1, 2020 WL 2124604, at *4 (D. Conn. May 5, 2020) (collecting cases).

The following § 3553(a) sentencing factors are particularly relevant in this case: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant"; and (2) "the need for the sentence imposed," which includes, *inter alia*, a sentence that justifiably "reflects the seriousness of the offense," that "afford[s] adequate deterrence to criminal conduct," and "protect[s] the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(1) and (2).

In this case, the § 3553(a) factors weigh against Defendant's release.  As evidenced by the nature and circumstances of his crimes, it is clear that Defendant intended to pursue a life-long career in committing acts of violence.  Defendant was convicted for violent and egregious crimes that he committed while a member of a notorious organized crime organization.  In particular, Defendant participated in multiple conspiracies to commit murder.  (*See* Opp. Br. at 3).  He also served as an "enforcer" in a widespread gambling ring.  (*See id*.).  As part of his responsibilities as an "enforcer," Defendant carried out threats of force and committed acts of violence.  (*Id*. (citing PSR ¶ 55)).

Defendant committed these crimes long ago.  True enough.  However, the seriousness of his crimes, the need to protect the safety of the public from even a possibility of recidivism, and

13

the public interest in adequately deterring these types of violent crimes weigh heavily against his release. For all of the foregoing reasons, Defendant's motion is denied.

## ORDER

**THIS MATTER** having come before the Court on Defendant Richard DeSciscio's ("Defendant") Motion for Compassionate Release, (ECF No. 5); and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented; and for good cause shown; and for all of the foregoing reasons;

**IT IS** on this 9th day of June, 2020,

**ORDERED** that Defendant's motion for compassionate release, (ECF No. 5), is **DENIED**.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.